IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FEDAYI CEBE**, *et al.*, | : | **CIVIL ACTION** |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| **BISOFT INC.**, *et al.*, | : | No. 25-cv-4973 |
| *Defendants*. | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                                                                          **December 5, 2025**

The Court writes for the benefit of the Parties and assumes familiarity with the facts of the case. Defendants move to dismiss Plaintiffs' breach-of-contract claim against Defendant Muchivolu and Plaintiffs' conversion and fraud claims in their entirety (ECF No. 13). For the reasons set forth below, the Motion (ECF No. 13) will be **GRANTED**. Plaintiffs' breach-of-contract claim against Defendant Bisoft, Inc., which Defendants do not move to dismiss, remains.

**I.**     **BACKGROUND**

The Court draws the following facts from Plaintiffs' Complaint and accepts them as true at the motion-to-dismiss stage. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). Plaintiff Fedayi Cebe, via his company Plaintiff Fit Solutions, LLC, worked indirectly as an independent contractor for non-party Dow Chemical from 2013 to 2024. ECF No. 1 ¶¶ 1, 10. Cebe reported his hours to and was compensated by an intermediary, Defendant Bisoft, Inc. *See id.* ¶ 1. Defendant Bisoft and Plaintiffs entered an oral agreement under which Bisoft retained $15 of Cebe's hourly rate with Dow Chemical for each hour worked and paid the remainder of Cebe's wages to Plaintiffs. *Id.*

Initially, Dow Chemical compensated Cebe at an hourly rate of $120, meaning that Defendant Bisoft paid Plaintiffs $105 per hour. *Id.* Subsequently, Dow Chemical increased Cebe's hourly rate, but Defendant Bisoft continued to pay Plaintiffs the same amount per hour. *Id.* ¶ 2.

Cebe subsequently confronted the sole owner and agent of Bisoft, Defendant Venkata Muchivolu, about the improper payments. *Id.* ¶ 3. As a result, Defendant Muchivolu agreed that Bisoft would take a reduced share of Cebe's hourly rate until Cebe recouped the missing payments. *Id.* For some time, Bisoft did just that. *Id.* However, Dow Chemical terminated Bisoft before Cebe could fully recoup his losses. *Id.*

In connection with the above events, Plaintiffs brought this action, asserting breach-of-contract, conversion, and fraud claims against Defendants. *See id.* ¶¶ 25–39. Defendants then moved to dismiss all claims except the breach-of-contract claim against Defendant Bisoft. *See* ECF No. 13 at 3–7.

## II. DISCUSSION

Defendants move to dismiss the breach-of-contract claim against Defendant Muchivolu and the conversion and fraud claims in their entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 13 at 4–7. The Court addresses each claim in turn.

### A. Breach-of-Contract Claim

Defendants move to dismiss the breach-of-contract claim only as to Defendant Muchivolu. *Id.* at 4. They argue that Plaintiffs contracted with Defendant Bisoft Inc., a corporation, and cannot hold Defendant Muchivolu, who is an agent of the corporation, personally liable for Bisoft's contractual breach. *See id.* at 4–5.

Ordinarily, a party who contracts with a corporation may sue only the corporation, and not its individual agents, for a breach of contract. *See Loeffler v. McShane*, 539 A.2d 876, 879 (Pa. Super. Ct. 1988). An exception to this rule exists when courts "pierc[e] the corporate veil" and hold the corporation's officers personally liable. *See Allegheny Energy Supply Co. v. Wolf Run Mining Co.*, 53 A.3d 53, 58 n.7 (Pa. Super. Ct. 2012). Veil-piercing requires a plaintiff to demonstrate that the individual defendant used the corporate form for their own personal gain, and

it should be applied only in exceptional circumstances. *See id.*

Here, Plaintiffs allege that they entered into an agreement with the corporate Defendant, Bisoft Inc., and plead that Defendant Muchivolu was an "agent of Bisoft." *See* ECF No. 1 ¶¶ 1, 3. Accordingly, Plaintiffs may proceed only against the corporate defendant—Bisoft—for a breach of contract unless they allege facts supporting veil-piercing. *See Loeffler*, 539 A.2d at 879 & n.3. Plaintiffs do not do so, nor do they point to any other theory of liability that supports holding Defendant Muchivolu personally liable for Bisoft's alleged breach of contract. *See Allegheny Energy Supply Co.*, 53 A.3d at 60 (noting that another theory of liability for holding corporate agents individually liable, participation theory, does not apply to breaches of contract). Accordingly, Plaintiffs' breach-of-contract claim against Defendant Muchivolu will be dismissed.

### B. Conversion Claims

Next, Defendants move to dismiss the conversion claims in their entirety, arguing that they are barred by the gist of the action doctrine. *See* ECF No. 13 at 5. That doctrine bars plaintiffs from bringing tort claims when the gravamen of the claims is actually a breach of contract. *See Earl v. NVR, Inc.*, 990 F.3d 310, 314–15 (3d Cir. 2021). To determine whether the doctrine applies, courts must look to "the nature of the duty" that was supposedly breached, and the "substance of the allegations" rather than their "label[s]" is controlling. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). If "the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract." *Id.*

Applying these principles, Plaintiffs' conversion claims are barred by the gist of the action doctrine. With respect to conversion, Plaintiffs allege that they had a right to "the amount Dow [Chemical] paid for [their] services less $15 per hour" but that Defendants retained some of those funds. ECF No. 1 ¶ 26. And Plaintiffs' right to those funds is contractual in nature. It depends on Plaintiffs' oral payment agreement with Bisoft, as well as the hourly rate Dow Chemical promised

3

to pay. *See id.* ¶¶ 1–3. The success of Plaintiffs' conversion claims therefore depends on agreements made by Plaintiffs and Defendant Bisoft, as well as by Dow Chemical. *See ABEC, Inc. v. Eat Just, Inc.*, No. 23-CV-1091, 2024 WL 1889243, at *6 (E.D. Pa. Apr. 30, 2024) (dismissing conversion claim, including based on the gist of the action doctrine, where allegations "[d]id not establish any right to the disputed [property] apart from that arising from the Agreement"); *see also Hirtle Callaghan Holdings, Inc. v. Thompson*, No. CV 18-2322, 2022 WL 2048656, at *7 (E.D. Pa. June 7, 2022) ("where the alleged entitlement to the property at issue arises solely from the contract between the parties," the gist of the action doctrine bars conversion claims). Accordingly, the gravamen of Plaintiffs' suit is a breach of contract, and Plaintiffs' conversion claims will be dismissed.

    Plaintiffs argue that even if the gist of the action doctrine applies to payment agreements between two parties, it does not apply when the source of the funds is a third party. *See* ECF No. 14 at 6–7. However, there is no basis for such a distinction, and the cases Plaintiffs cite are distinguishable. In two of these cases, the court did not address the gist of the action doctrine, or any similar doctrine, at all. *See Shonberger v. Oswell*, 530 A.2d 112, 113–15 (Pa. Super. Ct. 1987); *Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 878–79 (Pa. Super. Ct. 1997) (as to conversion claim, addressing the limited issue of whether attorneys had a property interest in settlement proceeds). Moreover, nearly every case Plaintiffs cite on this issue predates the Pennsylvania Supreme Court's decision in *Bruno v. Erie Insurance Co.*—its first decision on the gist of the action doctrine in nearly fifty years. 106 A.3d at 60, 64, 68–69 (noting that the court has had "scant occasion" to discuss the doctrine and last pointing to Pennsylvania Supreme Court cases from the 1960s).

    Since *Bruno*, cases have applied the gist of the action doctrine to conversion claims based on an alleged failure to pay. *See, e.g.*, *Ne. Metal Traders, Inc. v. TAV Holdings, Inc.*, No. 2:19-cv-

01546, 2020 U.S. Dist. LEXIS 44805, *10 (E.D. Pa. Mar. 16, 2020) (granting motion to dismiss conversion counterclaim where party was entitled to proceeds of a sale only by virtue of a contract); *Mun. Auth. v. CNX Gas Co., L.L.C.*, 380 F. Supp. 3d 464, 478 (W.D. Pa. 2019) (unlike conversion claims arising from intellectual property and confidential business information, finding that conversion claim stemming from withholding certain amounts from royalties "derive[d] entirely from the parties' contract"). And more broadly, courts have reiterated that where an entitlement derives only from a contract, a conversion claim is improper because the duty being breached is contractual in nature. *See, e.g.*, *ABEC, Inc.*, 2024 WL 1889243, at *6 (right to receive certain equipment was governed by an agreement); *Thompson*, 2022 WL 2048656, at *7 (property interest in customer lists arose from employment agreement); *Bessemer Sys. Fed. Credit Union v. Fiserv Sols.*, LLC, 472 F. Supp. 3d 142, 169–70 (W.D. Pa. 2020) (dismissing conversion claim because the plaintiff's property interest in account records and information, and the duty to return that information, arose entirely from a contract). The fact that funds came from a third party does not alter this analysis when the substance of the plaintiff's claims sounds in contract.

Like in these cases, Plaintiffs' right to payment arose from the employment arrangement with Dow Chemical and Defendant Bisoft, and the terms of payment, including whether amounts were improperly withheld, are governed by contract. *See* ECF No. 1 ¶¶ 1–3. In paying some, but allegedly not all, of what Plaintiffs were owed for their labor, Bisoft's alleged breach of a promise to pay flows from "the existence of the contract." *Bruno*, 106 A.3d at 68.

Plaintiffs also argue that the gist of the action doctrine does not apply to Defendant Muchivolu, who is Bisoft Inc.'s owner and agent, because only Bisoft contracted with Plaintiffs. *See* ECF No. 14 at 4. But "the gist of the action doctrine bars tort claims against an individual [corporate] defendant where the contract between the plaintiff and the officer's company created the duties that the individual allegedly breached." *Williams v. Hilton Group PLC*, 93 F. App'x

5

384, 387 (3d Cir. 2004) (per curiam); *cf. Endless Summer Prods., LLC v. Mirkin*, No. CV 15-6097, 2016 WL 807760, at *4 (E.D. Pa. Mar. 2, 2016) ("Endless Summer's tort causes of action are barred by the gist of the action doctrine. Hence, there are no tort claims for which Mirkin may be personally liable under the participation theory."). That rule exists with good reason. If plaintiffs could simply bring suit against corporate agents when the gist of the action doctrine barred their claims against the corporation, parties could easily circumvent the gist of the action doctrine.

Here, Plaintiffs allege that Muchivolu, in his capacity as Bisoft's corporate agent, personally participated in Bisoft's conversion by failing to compensate Plaintiffs according to the terms of the payment agreement. *See* ECF No. 1 ¶¶ 2–3. Because Plaintiffs' payment agreement with Bisoft "created the duties that [Muchivolu] allegedly breached," *Williams*, 93 F. App'x at 387, the gist of the action doctrine bars suit against Muchivolu, too.[1]

### C. Fraud Claims

Lastly, Defendants move to dismiss the fraud claims in their entirety. They argue that these claims are barred by the gist of the action doctrine and that, in any case, Plaintiffs fail to state a claim for fraud. *See* ECF No. 13 at 5–7. Because the gist of the action doctrine bars Plaintiffs' fraud claims, the Court need not reach Defendants' argument that Plaintiffs failed to state a claim.

The gist of the action doctrine bars fraud claims where the duty to make representations stems from "the terms of [the parties'] contract" and the party made a representation that it "would not ordinarily have been obligated to [] but for the existence of the contract." *Bruno*, 106 A.3d at 68. For instance, in *Wiggins v. Jefferson Einstein Hospital*, the plaintiff alleged that the defendant misrepresented the amount of taxes to be withheld from a settlement agreement. *Wiggins v.*

---

[1] In the alternative to moving to dismiss the conversion claims in their entirety, Defendants move to dismiss the conversion claim only against Defendant Muchivolu based on the fact that he is not a party to any contract. *See* ECF No. 13 at 4–5. The Court does not reach this argument because it dismisses the conversion claims in their entirety.

*Jefferson Einstein Hosp.*, No. CV 24-0051, 2024 WL 5361782, at *2 (E.D. Pa. May 16, 2024), *aff'd*, No. 24-2095, 2024 WL 5074894 (3d Cir. Dec. 11, 2024). There, the court concluded that the plaintiff's fraud claim was barred by the gist of the action doctrine because whether the defendant had correctly calculated the tax withholdings turned "entirely on the breach of the settlement agreement" and the application of federal tax law to the settlement agreement. 2024 WL 5361782, at *2–3; *cf. also Smith v. Lincoln Benefit Life Co.*, 395 F. App'x 821, 823 (3d Cir. 2010) (affirming application of gist of the action doctrine where insurance company, in performing its obligations under the policy, allegedly misrepresented insurance premium due date).

Here, Defendants' supposed misrepresentation of Plaintiffs' wages arose from the terms of the payment agreement. *See Wiggins*, 2024 WL 5361782, at *2. Defendants would not have been obligated to identify and pay Plaintiffs' wages except for the terms of that agreement. *See id.* Defendants' duty to correctly represent Plaintiffs' wages is therefore contractual in nature. *See id.* Nor do Defendants step outside of those contractual terms by making collateral representations for which the agreement "merely served as [a] vehicle." *See Bruno*, 106 A.3d at 116 (gist of the action doctrine did not apply to representation that mold was non-toxic where the defendant was contractually required to remediate the mold whether it was non-toxic or not). Because the duty to represent Plaintiffs' wages properly is contractual, the gist of the action doctrine bars Plaintiffs' fraud claims.

To argue otherwise, Plaintiffs cite *Orthovita, Inc. v. Erbe*, No. 07-2395, 2008 U.S. Dist. LEXIS 11088, (E.D. Pa. Feb. 14, 2008), but their reliance on that case is misplaced. *See* ECF No. 14 at 3. There, the defendant asserted "essentially without explanation" that the gist of the action doctrine barred fraud claims brought by his former employer. *Id.* at *21. And the fraud claim turned on the defendant's representation that he was a loyal employee—an issue his employment agreement did not squarely cover—as well as affirmative acts the defendant took to allegedly

7

conceal his theft of business information. *See id.* at *22. Unlike in *Orthovita*, whether Defendants properly paid Plaintiffs and correctly represented Plaintiff Cebe's wages is directly covered by the parties' agreement. In addition to involving virtually no argument about the gist of the action doctrine's application to fraud, *Orthovita* therefore does not govern this case.

### III. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' Motion to Dismiss (ECF No. 13). Accordingly, the Court will dismiss the breach-of-contract claim against Defendant Muchivolu and the conversion and fraud claims against both Defendants. Plaintiffs' breach-of-contract claim against Bisoft, Inc., which Defendants have not moved to dismiss, remains. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**