**1IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FEDAYI CEBE, *et al.*,** | : | **CIVIL ACTION** |
| ***Plaintiffs*,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BISOFT INC., *et al.*,** | : | **No. 25-cv-4973** |
| ***Defendants*.** | : | |

# MEMORANDUM

**KENNEY, J.** **July 29, 2026**

## I. INTRODUCTION

The Court writes for the benefit of the Parties and assumes familiarity with the underlying facts. The above-captioned action arises out of an alleged oral agreement between the Parties whereby Plaintiff Fedayi Cebe's limited liability company ("LLC"), Fit Solutions, LLC, contracted with Defendant Bisoft Inc. to perform work for non-party Dow Chemical. ECF No. 1. Plaintiffs maintain the position that the Parties agreed orally that Defendants would retain only $15 for every hour of work Cebe performed for Dow and that Dow would set Cebe's hourly rate. *Id.* However, Defendants dispute that such an arrangement ever existed between the Parties. *See* ECF No. 49.

Presently before the Court is Defendant's Motion for Summary Judgment on Plaintiffs' remaining claim for breach of contract. *Id.* For the reasons set forth below, the Motion (ECF No. 49) will be **DENIED** and Plaintiffs' breach of contract claim will proceed to trial.

## II. BACKGROUND

### A. Procedural History

On August 29, 2025, plaintiffs Fedayi Cebe and Fit Solutions, LLC ("Fit Solutions") (collectively, "Plaintiffs") initiated the instant litigation by filing a complaint against Defendants Bisoft Inc. ("Bisoft") and Venkata Muchivolu. ECF No. 1. Plaintiffs' three-count complaint

asserted claims for conversion, fraud, and breach of contract. *Id.* ¶¶ 25–39. Bisoft and Muchivolu moved to dismiss the Complaint for failure to state a claim. ECF No. 13. The Court granted Bisoft and Muchivolu's Motion in part and dismissed, without prejudice, Plaintiffs' conversion and fraud claims in their entirety and dismissed Plaintiffs' breach of contract claim against Defendant Muchivolu. ECF Nos. 15–16. Thereafter, Plaintiffs were granted leave to amend their Complaint. ECF No. 28.

On February 25, 2026, Plaintiffs filed an Amended Complaint. ECF No. 31. The Amended Complaint set forth claims against Bisoft and Muchivolu for conversion, fraud, breach of contract, and violations of the Pennsylvania Wage Payment and Collection Law ("WPCL"). ECF No. 31 ¶¶ 40–60. Bisoft and Muchivolu moved to dismiss all claims brought against Defendant Muchivolu, and to dismiss Plaintiffs' conversion, fraud, and WPCL claims in their entirety. ECF No. 37. The Court granted Bisoft and Muchivolu's motion and Ordered Defendant Bisoft (hereinafter, "Defendant") to answer the remaining breach of contract claim.[1] ECF Nos. 42 at 2–7; 43 at 1.

Defendant now moves for summary judgment on Plaintiffs' remaining breach of contract claim. ECF No. 49. The matter has been fully briefed and will be decided based on the submissions without oral argument. ECF Nos. 50–52.

**B. Factual Background**

The following facts are taken from the Defendant's Concise Statement of Stipulated Facts (ECF No. 49) as well as the Parties' respective Statements of Additional Material Facts (*Id.*, 51-1) to the extent those facts are well-supported by pinpoint citations to the record. *See* Fed. R. Civ. P.

[1] On April 14, 2026, Plaintiffs moved for reconsideration of the Court's Memorandum and Order granting in part Defendants' Motion to Dismiss. ECF No. 45. That Motion was denied on April 23, 2026. ECF No. 48.

56(c)(1); *see also Ullrich v. U.S. Sec. of Veterans Affs.*, 457 F. App'x. 132, 137 (3d Cir. 2012) ("Rule 56 explicitly requires the party asserting the absence or existence of a genuinely disputed fact to support that assertion by citing to specific parts of the record." (citation omitted)).

From 2015–2024, Plaintiff Fedayi Cebe worked as a subcontractor for non-party Dow Chemical ("Dow") through his LLC, Fit Solutions. ECF No. 49 ¶ 12.[2] The arrangement worked as follows: Fit Solutions contracted with Bisoft, another company, to do the work for Dow. *Id.* ¶ 14. And every month, Fit Solutions provided Bisoft with an invoice for the hours it worked for Dow. *Id.* ¶ 15. Neither Party disputes that there are no or communications that exist between the Parties that specifies or otherwise evidences the payment structure that Plaintiffs maintain was the Parties' arrangement. *Id.* ¶ 24; ECF No. 49-3 at 1. But the Parties do, of course, dispute whether or not Bisoft and Plaintiffs formed the agreement that Plaintiffs claim that they did. *See* ECF No. 49 ¶¶ 19–23; *see also* ECF No. 51-1 ¶¶ 19–23. Namely, that Cebe would work for Dow as a subcontractor of Bisoft, that Cebe would work for Bisoft through his LLC, Fit Solutions, and that Bisoft would pay Fit Solutions an hourly rate that was to be the hourly rate that Dow was paying Bisoft for Fit Solution's labor, less $15 per hour. *See* ECF No. 49 ¶¶ 19–23; *see also* ECF No. 51-1 ¶¶ 19–23.

*According to Defendant*, Bisoft never agreed to retain only $15 per hour from the hourly rate that Dow was paying for the work Fit Solutions performed and to remit the remaining balance from Dow to Fit Solutions. ECF No. 49 ¶¶ 19–20. Defendant never agreed that Fit Solution's compensation would increase, per hour, commensurate with any increase in the hourly rate Dow

[2] Defendant has included its "Concise Statement of Stipulated Material Facts" and "Concise Statement of Additional Facts" in Parts II and III of its Memorandum of law in Support of Motion for Summary Judgment. ECF No. 49 at 3–6. Defendant has set forth both Statements of Fact in continuous, numbered paragraphs as required by Judge Kenney's Policies and Procedures for Counsel. Accordingly, the Court refers to Defendant's Statements of Fact by paragraph number.

was paying Bisoft for Fit Solutions' work. *Id.* ¶ 21. Instead, the Parties agreed that Bisoft would pay Fit Solutions for the hours it worked for Dow at a "certain" hourly rate, i.e., a flat hourly rate. *See id.* ¶ 22. This agreement was separate from the agreement between Dow and Bisoft concerning the hourly rate that Dow would pay Bisoft for Fit Solutions' work. *Id.* ¶ 23.[3] Plaintiffs never demanded payment based upon an increase in the hourly rate for Fit Solutions' work that *Bisoft* had negotiated with Dow. *Id.* ¶ 28.

*According to Plaintiffs*, Muchivolu indicated that Dow would pay Bisoft $120 per hour for Fit Solutions' work, and that Bisoft would retain $15 per hour and pay Fit Solutions the rest of the money from Dow. ECF No. 51-1 ¶ 32; ECF No. 50-1 ¶ 5. Specifically, Muchivolu and Cebe agreed that, acting through his LLC, he would perform the work for Dow, and that Bisoft would pay his LLC the same hourly wage, minus $15 per hour. ECF No. 51-1 ¶ 32; ECF No. 50-1 ¶ 5. Every year, in October, when Bisoft renewed its contract with Dow, Cebe inquired with Muchivolu to ask if his hourly rate had been increased. ECF No. 51-1 ¶ 39; ECF No. 50-1 ¶ 9. Each time, Muchibolu responded that there was no increase. ECF No. 51-1 ¶ 40; ECF No. 50-1 ¶ 9. Cebe was later told by a coworker that Dow had increased the rate for his work, but that Muchivolu had concealed that from him and continued to pay him his previous rate as if there had not been a raise. ECF No. 51-1 ¶ 41; ECF No. 50-1 ¶ 10. When Cebe confronted Muchivolu about the discrepancy, Muchivolu confessed that Dow had raised his Fit Solutions' hourly rate and that he had kept it secret, resulting in underpayment. ECF No. 51-1 ¶¶ 42–43; ECF No. 50-1 ¶ 11. Muchivolu

[3] Defendant points the Court to the Parties' "course of dealings," i.e., the invoices that Fit Solutions sent Bisoft for its labor, the checks Bisoft sent to Fit Solutions as evidence that the Bisoft paid Fit Solutions based on the Parties' mutually agreed upon flat hour rate—not the rate Dow had set for Fit Solutions' work. *Id.* ¶ 25; *Infra* Part II(B)(1)–(2). Defendant also points to a series of WhatsApp messages exchanged in 2024 between Cebe and Venkata Muchivolu in which Cebe requested Muchivolu to pay him a "previously agreed to rate of $140.00 per hour, instead of the lower rate he was being paid at the time" as further evidence of the Parties' understanding of the agreement. ECF No. 49 ¶ 26; *Infra* Part II(B)(3).

promised to take a reduced portion of his wages from Dow until he had recouped the difference in pay. ECF No. 51-1 ¶ 44; ECF No. 50-1 ¶ 11. Then, for a few months, Bisoft did pay him an increased rate. ECF No. 51-1 ¶ 45; ECF No. 50-1 ¶ 12. However, Dow terminated its contract with Fit Solutions before he had fully recouped the difference. ECF No. 51-1 ¶ 47; ECF No. 50-1 ¶ 12.

### 1. The Invoices

Defendant includes as an exhibit, a series of invoices it received from Fit Solutions for the hours of work it performed for Dow. ECF No. 49-1 at 1–35. The invoices correspond to the hours Fit Solutions worked and submitted to Bisoft for payment during the years of 2015, 2016, 2017, and 2018. *Id.* Defendant has not included invoices from each month during the period of time that Fit Solutions contracted with Bisoft. *See id.* Instead, the invoices correspond to the following months: January, March, April, May, June, July, and September, October, November, and December 2015 (*Id.* at 1–7, 26–28); January, February, April, May, July, and September 2016 (*Id.* at 29–35); January, February, March, April, May, June, July, August, September, October 2017 (*Id.* at 8–17); January, February, March, April, May, June, July, August 2018, and January 2023.[4] *Id.* at 18–25; ECF No. 49-6 at 1. Each of the invoices corresponding to work performed during 2015–17 lists the same job description as:

> **Cebe Fedayi**
> Projects: Consulting at Dow Chemicals

*Id.* at 1–35. Each of the invoices features columns labeled, "quantity" and "unit price." *Id.* The

[4] Defendant has appended a single invoice corresponding to work performed by Mr. Cebe during the month of January 2023 as "Exhibit E." ECF No. 49-6 at 1. However, Defendant does not refer to Exhibit E in either of its Statements of Fact. *See* ECF No. 49 at 3–6. Defendant references Exhibit E later on in its brief, but erroneously refers to the invoice as having been prepared in 2024. *See* ECF No. 49 at 9–10. Similarly, Exhibit E is referred to as "Copy of Bisoft Inc.'s Invoice to Dow Chemical for Cebe's hours worked the month of January 2024." *Id.* at 14.

"quantity" corresponds to the number of hours worked, and the "unit price" corresponds to the hourly rate. *See id.* Over the span of these invoices, the "quantity" and "unit price" vary. *See id.* All of the invoices corresponding to 2015, 2016, 2017, and 2018 each list the unit price as $105. *Id.* at 1–35. Defendant has also an invoice included that was sent by Bisoft to Dow for the hours that Fit Solutions had worked for Dow in January 2023. ECF No. 49-6 at 1. However, the invoice erroneously described as an invoice for work performed in January 2024, states that the "Rate" for the hours worked as $152.25. *Id.*

As Defendant points out, none of the invoices contain a notation, or otherwise refer to Dow's billing rate. ECF No. 49 ¶ 4. Nor do the invoices request payment based upon Dow's billing rate less $15, or otherwise contemplate a revenue-sharing agreement between Bisoft and Fit Solutions. *Id.* ¶¶ 5–6.

**2. The Checks**

Defendant has also included an exhibit, photocopies of checks paid to Fit Solutions in 2024. ECF No. 49-5 at 1. The checks correspond to payments made in January, February, March, and April of 2024, for the hours Fit Solutions worked for Dow during the months of September, October, November, and December 2023.[5] *Id.* The checks do not stipulate the "unit price," or hourly rate that Bisoft was paying Fit Solutions for its work. *See id.* But the Court is not incapable of simple calculations. Dividing the amount paid by the number of hours listed in the "Memo" section, the hourly rate comes to $140 for the months of September and October 2023. *Id.* Whereas the hourly rate for the months of November and December 2023 decreases to $130.50. *Id.*

In opposition to Defendant's evidence offered in support of its Motion for Summary

[5] The "Memo" section on each check states the month during which the work was performed and the number of hours of work performed that month. *Id.*

Judgment, Plaintiffs have also included photocopies of checks received by Fit Solutions. ECF No. 50-3 at 1–4. The checks correspond to payments to Fit Solutions for the work it performed during the months of February, March, April, May, June, July, September, October, November and December 2023. *Id.* at 1–3. Plaintiffs also include checks from 2024 for work performed during the months of January, February, March, April, and May 2024. *Id.* ¶ 4. The checks reflect that Defendant paid Fit Solutions $110 per hour for the month of February 2023, $130 per hour for the month of March 2023, $140 per hour for the months of April, May, June, July, September, and October 2023, and 130.5 for November and December 2023. *Id.* at 1–3. The checks further reflect that Bisoft paid Fit Solutions an hourly rate of $130.50 per hour in January, February, March, April, and May 2024. *Id.* at 4.

**3. WhatsApp Messages**

Finally, Defendants have also included as an exhibit, an apparent log of WhatsApp messages sent between Plaintiff Cebe and Venkata Muchivolu. ECF No. 49-4 at 1–2. Plaintiffs do not dispute the authenticity of the messages. The messages include an apparent request for an increase to Fit Solution's rate of pay. That is, on March 21, 2024 at 4:59:02 P.M., Plaintiff Cebe wrote, "Venkata, I got the November check. Can you send me the old 140 rate since I am being let go in May? Hope you understand[.]" *Id.* at 2. There is no response to this message included. *See id.*

## III. LEGAL STARDARD

Summary judgment is proper when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, "[s]ummary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Wright v. Owens Corning*, 679 F.3d 101, 105

(3d Cir. 2012) (internal quotations and citation omitted). A fact is considered "material" if it could "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). The Court is not to engage in "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" as those are functions that are reserved for the jury. *Id.* at 255. Genuine disputes over material facts exist "if a reasonable jury could return a verdict for the nonmoving party." *Wiest v. Tyco Elec. Corp.*, 812 F.3d 319, 328 (3d Cir. 2016) (internal quotations and citation omitted).

## IV. DISCUSSION

Defendant moves for summary judgment on Plaintiffs' breach of contract claim. ECF No. 49. Plaintiff opposes. ECF No. 51.

### A. Defendant's Concise Statements of Stipulated Facts and Additional Facts

As an initial matter, the Court notes that several of Defendant's Concise Statements of Stipulated Material and Additional Facts do not comport with the requirements of summary judgment motion practice. That is, several of Defendant's Stipulated Material Facts and Additional Facts are presented without any citations to the record. *See, e.g.*, ECF No. 49 ¶¶ 2–3, 13, 25. Others contain record citations that do not support the matter asserted. *See, e.g.*, *id.* ¶¶ 17 (containing record citation with erroneous pin citation), 18 (containing record citation with erroneous pin citation). This is plainly at odds with Federal Rule of Civil Procedure 56(c) and the Court's own Policies and Procedures for Counsel. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"); *see also* Kenney, J.

Policies and Procedures for Counsel, Part II(D)(5).[6]

However, upon an independent review of the record it appears that where Defendant has provided short form "*id.*" citations to Exhibit A, ECF No. 49-1, that Defendant meant to refer to the previous exhibit cited, Exhibit B, ECF No. 49-2. *See* ECF No. 49 ¶¶ 17–23. Unlike Exhibit A, which is an exhibit containing a series of invoices described *supra* Part II(B)(1), Exhibit B is the affidavit of Venkata Muchivolu. ECF No. 49-2. Most, if not all, of the pin citations to *Exhibit B*, ECF No. 49-2 support the portion of Defendant's Concise Statement of Additional Facts that features an erroneous citation. *Compare* ECF No. 49-2 at ¶¶ 10–13, 15, *with* ECF No. 49 ¶¶ 18–23. Only one Statement of Additional Fact is unsupported by a pin citation to Exhibit B, ECF No. 49-3. *Compare* ECF No. 49-2 ¶ 19, *with* ECF No. 49 ¶ 17. Accordingly, this portion of Defendant's Concise Statement of Additional Facts has not been considered by the Court for the purpose of resolving this Motion. The remainder of Defendant's Concise Statement of Material Facts that erroneously cite to portions of Exhibit A, ECF No. 49-1, will be construed as citing to Exhibit B, ECF No. 49-2. Where statements of fact have been properly disputed by Plaintiffs, the Court notes as much.

With its source material square away, the Court now turns to the merits of Defendant's Motion for Summary Judgment. ECF No. 49.

**B. Summary Judgment Must be Denied as to Plaintiffs' Remaining Breach of Contract Claim**

Plaintiffs' last surviving claim is for breach of contract. *See* ECF No. 43. As discussed *supra* in Part II(B), the Parties do not dispute that there is no writing memorializing their payment arrangement. ECF No. 49-3 at 1. The Parties dispute, however, whether an oral agreement to that

[6] Judge Kenney's Policies and Procedures for Counsel can be found at https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/kenpol.pdf.

effect was ever made. ECF No. 49 ¶¶ 19–22; ECF No. 49-2 (Affidavit of Venkata Muchivolu) ¶¶ 7, 10–15, 20, 23; ECF No. 51-1 ¶¶ 19–24; ECF No. 50-1 (Affidavit of Fedayi Cebe) ¶¶ 4–5, 7, 9.

**1. Plaintiffs' Breach of Contract Claim is Timely in its Entirety**

Before addressing the merits of Plaintiffs' breach of contract claim, the Court considers the issue of timeliness. Defendant argues that Plaintiffs' breach of contract claim is barred in substantial part by the statute of limitations. ECF No. 49 at 12.

Breach of contract claims based on oral contracts must be brought within four years of the claim's accrual. *Owens v. Pa. Minority Bus. Dev. Auth.*, No. 23-1896, 2023 WL 4993189, at *1 (3d Cir. Aug. 4, 2023) ("State law claims for breach of contract and . . . are governed by a four-year statute of limitations." (first quoting 42 Pa. C.S.A. § 5525(a); and then quoting *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997))). As relevant here, "[w]here the contract is a continuing one, the statute of limitations runs from the time when the breach occurs or when the contract is in some way terminated." *Raymond Handling Concepts Corp. v. Invata LLC*, No. 23-3002, 2024 WL 3466178, *2 n.4 (3d Cir. July 18, 2024) (quoting *Cole*, 701 A.2d at 989).

The statute of limitations may "tolled," or delayed. One way to delay the statute of limitations from beginning to run is the "discovery rule, . . . a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by [the defendant's] conduct." *Crouse v. Cyclops Indus.*, 560 Pa. 394, 404 (Pa. 2000) (citing *Pearce v. Salvation Army*, 674 A.2d 1123, 1125 (Pa. Super. 1996)). But the issue of whether the Plaintiff knew or reasonably should have known of the defendant's conduct is a question of fact. *Id.* (citations omitted).

Here, Defendant argues that Plaintiffs' breach of contract claim is barred in "substantial part" by the statute of limitations. ECF No. 49 at 12. Specifically, Defendant argues that any

alleged underpayment for Fit Solutions' hours worked that occurred outside of the applicable four-year statute of limitations period should be dismissed in whole because each alleged "breach" constituted a separate transaction that triggered the statute of limitations. *Id.* Defendants ask the Court to conclude as a matter of law, that Plaintiff may not bring a breach of contract claim for any alleged breaches that occurred prior to August 29, 2021. *Id.* In response, Plaintiffs maintain the position that the discovery rule applies to toll the statute of limitations. ECF No. 51 at 7. However, nowhere in their briefing do Plaintiffs offer an approximate date or time frame during which they *did* finally discover that Bisoft was underpaying Fit Solutions. *See id.* While Plaintiff Cebe avers that a coworker revealed that Dow had raised the rate it compensated Bisoft for its subcontractors' hours, including Cebe's, Cebe is silent as to when he was told. *See* ECF No. 50-1 ¶ 10. Thus, the issue before the Court is whether the breach that triggered Plaintiffs' right to bring a breach of contract claim took place prior to the applicable four-year statute of limitations period.

Plaintiffs' breach of contract claim accrued when Bisoft underpaid it for the hours it worked for Dow. *See Raymond Handling Concepts Corp.*, 2024 WL 3466178, *2 n.4 (quoting *Cole*, 701 A.2d at 989). Plaintiff Cebe avers that Venkata Muchivolu indicated that Cebe would work through Fit Solutions for Dow, as a subcontractor for Bisoft, and be paid at the rate Dow was paying less $15 per hour. *Supra* Part II(B). Presumably, this conversation predates or was contemporaneous with the start of Plaintiffs' work, operating as Fit Solutions, for Bisoft. This is supported by the record, including all of the invoices and checks exchanged by the Parties. *See supra* Part II(B)(1)–(2). It follows, therefore, that Plaintiff Cebe, operating as Fit Solutions, believed his rate of pay was the rate Dow had agreed to pay for his work, which at some point was $120 per hour. ECF No. 50-1 ¶ 5. This is corroborated by the invoices that Fit Solutions sent to Bisoft as early as 2016. The invoices provide a "unit price" of $105, which would reflect the $15

Bisoft took from Fit Solution's pay from Dow. ECF No. 49-6 at 1–35. This poses a significant problem for Plaintiffs. If the breach occurred in 2016, the claim would be untimely as a matter of law. But Plaintiffs have raised the discovery rule. ECF No. 51 at 7. So, the timeliness of Plaintiffs' breach of contract claim depends on whether Plaintiffs knew or reasonably should have known about the underpayment before August 29, 2021. *See Crouse*, 560 Pa. at 404 (citation omitted).

Upon review, the Court is satisfied that a reasonable finder of fact, presented with the evidence in the record, could find that Plaintiffs' breach of contract claim is not barred by the statute of limitations. Here, the record reflects that though Bisoft received invoices from Fit Solutions for hours worked as early as 2016, it also received invoices from Fit Solutions for work it performed during the years of 2023 and 2024. Therefore, a reasonable finder of fact could determine that at least some of the conduct occurred within the applicable four-year statute of limitations period. This is because the record, at present, is silent as to *when* Plaintiff Cebe discovered, or reasonably should have found out about the alleged breach.[7] While the Court could decide that Plaintiff has failed to properly dispute that the breach did not occur outside of the applicable statute of limitations period, the Court finds such a determination would be premature. This issue is ripe for a jury to decide after hearing testimonial evidence from the Parties' respective witnesses.

Therefore, the Court finds that disputes of material fact remain as to the issue of timeliness

[7] On the issue of diligence, the Court is satisfied that Plaintiffs have created a genuine dispute of material fact regarding Plaintiff Cebe's respective diligence in attempting to find out whether Dow had increased the hourly rate on which his rate of pay from Bisoft was based. *See* ECF No. 50-1 ¶ 9. That is, Plaintiff Cebe avers that each year he asked Muchivolu if Dow had increased the rate. *Id.* This is critical here, because Cebe further avers that Dow and Bisoft renewed their agreement, "usually in October." *Id.* ¶ 8. So, Plaintiffs could not have discovered the underpayment unless Muchivolu told Cebe that there had been an increase and that increase was not reflected in Fit Solution's payments from Bisoft. In fact, according to Cebe, Muchivolu did admit that Dow had raised the rate it was paying Bisoft for Fit Solutions' labor and that Bisoft had neglected to raise Fit Solutions' hourly rate. *Id.* ¶¶ 11–12.

of Plaintiffs' breach of contract claim.[8] Accordingly, the Court will deny Defendant's Motion for Summary Judgment on this basis.

**2. Genuine disputes of material fact remain as to Plaintiffs' Breach of Contract Claim**

On to the merits of Plaintiffs' breach of contract claim, the Court finds that there are genuine disputes of material fact remaining to be resolved by a finder of fact. Here, the Parties dispute entirely the existence of the oral agreement. To obviate the need for a finder of fact to resolve this obvious factual dispute, Defendant asks the Court to look to the Parties course of dealings. ECF No. 49 at 10. Defendant maintains the position that over the course of Fit Solutions' relationship with Bisoft, it transmitted invoices for its hours and requested payment at a "fixed hourly rate." *Id.*

Upon a diligent review of the record, inclusive of the invoices, the checks, and WhatsApp messages, the Court finds that there is sufficient evidence from which a reasonable finder of fact could conclude that Defendant and Plaintiffs agreed that Bisoft would pay Fit Solutions such that Bisoft would take $15 from whatever hourly wage Dow was paying it for the work Cebe, acting through Fit Solutions, performed, and that Bisoft breached that agreement when it failed to pay Fit Solutions at the agreed upon rate. The mere fact that the invoices refer to a specific hourly rate does prove that the Plaintiffs' demand for payment was a flat fee. That question remains open for interpretation by a finder of fact.[9]

---

[8] If the issue of timeliness is addressed and decidedly turns in the Defendant's favor, a Motion for a Judgment as a Matter of Law is the appropriate recourse. *See* Fed. R. Civ. P. 50.

[9] The Court rejects Defendant's argument that Plaintiff Cebe's affidavit cannot create an issue of fact. *See* ECF No. 52 at 4. To be clear, Defendant does not invoke the sham affidavit doctrine, or otherwise attack the contents of the affidavit. *Id.* Instead, Defendant's only qualm with the affidavit is that it contradicts Defendant's own characterization of the invoices: that the invoices demonstrate exactly how Fit Solutions wanted to be paid, by flat fee. *See id.* This kind of

The Court rejects Defendant's argument that the WhatsApp messages demonstrate the Parties' "flat fee" arrangement. As discussed, *supra*, plaintiff Cebe avers that when he eventually confronted Muchivolu, he confessed to underpaying Fit Solutions and began taking a smaller portion of his hourly rate from Dow until he was terminated in 2024. ECF No. 50-1 ¶¶ 11-12. To be sure, evidence that Cebe specifically requested a higher rate could be credited in favor of a judgment in favor of Defendant, that Plaintiff was always paid a flat fee and that he had simply requested a raise. Similarly, however, the same evidence could be credited in support of a judgment in favor of Plaintiffs because Cebe's request to Muchivolu for a higher rate could easily be interpreted as a request for a higher rate reflective of Muchivolu's assurance that Bisoft wold retain a smaller portion of Fit Solutions' hourly rate from Dow in order to permit Plaintiffs to recoup its lost wages from previous underpayments sooner ahead of a known termination date. Thus, a reasonable fact finder could credit this evidence as indicative that Plaintiff's version of events, that a profit-sharing arrangement was agreed to was in fact the arrangement.

For these reasons, the Court finds that there are genuine disputes of material fact that must be resolved by a finder of fact as to Plaintiffs' breach of contract claim. Accordingly, the Court will deny Defendant's Motion for Summary Judgment.

## V. CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendant's Motion for Summary Judgment (ECF No. 49). Plaintiffs' breach of contract claim will proceed to trial. The Parties shall make their pretrial disclosures as required by the Scheduling Order. ECF No. 20. An appropriate Order will follow.

**BY THE COURT:**

---

contradiction is exactly the kind of issue of fact that precludes summary judgment. *See supra* Part III.

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**